[No. 10958-5-III.   Division Three.   July 30, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. RODNEY J. BARWICK, *Appellant.*

*Larry C. Stephenson,* for appellant.

*Andrew K. Miller, Prosecuting Attorney,* and *Carrie L. Runge, Deputy,* for respondent.

THOMPSON, A.C.J. — Rodney J. Barwick appeals his conviction for possession of cocaine. He assigns error to the court's denial of his motion to suppress evidence of the drug seized from his wallet following his arrest for a traffic infraction. We reverse.

At approximately 11:20 p.m. on February 21, 1990, Trooper Jim Deiner of the Washington State Patrol stopped Susan Perry after he observed her driving a vehicle with a defective headlight. Trooper Deiner approached the driver's side of the vehicle and contacted Ms. Perry. Mr. Barwick was in the passenger seat. At that point, he saw a partially opened half case of beer on the floor of the right front passenger compartment. He also noticed the odor of intoxicants on Ms. Perry, although she did not appear to him to be so affected she could not drive. He testified:

> Usually, if there's an open case like that, then there's beers in the car. If there's beers in the car and they are not in the box, they are not in the box for a reason, and that indicates to me they have been taken out so someone can drink out of them.

Trooper Deiner asked Ms. Perry if there were any open containers in the vehicle, to which she replied "no". He testified he asked Ms. Perry if it was okay if he looked, and she responded "go ahead". Ms. Perry and Mr. Barwick stated Trooper Deiner did not ask permission to search. Rather, he ordered them out of the car, then proceeded to look in the front, back, and under the seats. He found an open can of beer under the seat in which Mr. Barwick had been sitting.

Trooper Deiner concluded Mr. Barwick had violated the open containers law,[1] and asked him for identification so he could issue a citation. Mr. Barwick initially said he did not

---

[1] RCW 46.61.519(2) provides:

"It is a traffic infraction for a person to have in his possession while in a motor vehicle upon a highway, a bottle, can, or other receptacle containing an alcoholic beverage if the container has been opened or a seal broken or the contents partially removed."

have any identification. On the third inquiry, he said he had only a Costco card. The card had Mr. Barwick's name and picture on it, but it did not list his address or date of birth. Trooper Deiner asked him: "Don't you have any further identification besides this?" Mr. Barwick said, "no".

According to Trooper Deiner, Mr. Barwick was acting furtively, as though he did not want the trooper to see inside his wallet. Trooper Deiner testified it is common for someone who has an outstanding bench warrant to try to conceal his identity, and it appeared to him there were cards or other forms of identification in Mr. Barwick's wallet.[2] Because Trooper Deiner was not satisfied with Mr. Barwick's identification, and because his suspicions were aroused by Mr. Barwick's conduct, he asked Mr. Barwick to place the wallet on the hood of the car. Mr. Barwick complied. When Trooper Deiner directed his flashlight on the partially opened wallet, he saw a bindle containing a substance which later tested positive for cocaine. Trooper Deiner arrested Mr. Barwick for possession.

On appeal, Mr. Barwick contends the initial search of the vehicle was improper. Alternatively, he argues the trooper could not justify the search of his wallet as incident to a valid arrest, because a full custodial arrest for a minor traffic violation is unlawful if the defendant signs a promise to appear. *See State v. Hehman,* 90 Wn.2d 45, 47, 578 P.2d 527 (1978); RCW 46.64.015.

We need not decide whether Trooper Deiner properly searched Ms. Perry's vehicle because we agree with Mr. Barwick that the subsequent search of his wallet was unlawful. The procedure following an arrest for a traffic infraction is set forth in RCW 46.64.015, which states:

> Whenever any person is arrested for *any violation of the traffic laws* or regulations *which is punishable as a misdemeanor or by imposition of a fine,* the arresting officer may

---

[2]In its appellate brief, the State asserts Mr. Barwick also gave Trooper Deiner his brother's driver's license. However, it is clear from the record that this document was handed over *after* the bindle was discovered. Thus, this fact cannot be used to justify the search of the wallet.

> serve upon him or her a traffic citation and notice to appear in court. . . . The arrested person, in order to secure release, and when permitted by the arresting officer, must give his or her written promise to appear in court as required by the citation and notice by signing in the appropriate place the written citation and notice served by the arresting officer . . . *The detention arising from an arrest under this section may not be for a period of time longer than is reasonably necessary to issue and serve a citation and notice, except that the time limitation does not apply under any of the following circumstances:*
> *(1) Where the arrested person refuses to sign a written promise to appear in court as required by the citation and notice provisions of this section;*
> *(2) Where the arresting officer has probable cause to believe that the arrested person has committed any of the offenses enumerated in RCW 10.31.100(3), as now or hereafter amended;*

(Italics ours.) (An open containers violation is not one of the enumerated offenses.) Here, Trooper Deiner never gave Mr. Barwick an opportunity to sign a promise to appear.

■ In a series of cases beginning with *State v. McIntosh*, 42 Wn. App. 579, 712 P.2d 323, *review denied*, 105 Wn.2d 1015 (1986), the Court of Appeals has held that custodial arrests for misdemeanor traffic offenses are proper if the arresting officer reasonably believes the individual will disregard his promise to appear. *See State v. Reeb*, 63 Wn. App. 678, 682, 821 P.2d 84 (1992); *State v. Feller*, 60 Wn. App. 678, 680-81, 806 P.2d 776, *review denied*, 117 Wn.2d 1005 (1991), and cases cited therein. However, the open containers violation for which Trooper Deiner proposed to cite Mr. Barwick is merely a traffic infraction; it is not a misdemeanor. RCW 46.61.519.

■ Moreover, the facts do not support a reasonable belief that Mr. Barwick would fail to appear and answer the citation. Mr. Barwick was not driving. Thus, there was no requirement he have a driver's license on his person. Indeed, there is no general requirement in this country for citizens to carry *any* identification. Nor is Trooper Deiner's observation that Mr. Barwick appeared to be trying to conceal the contents of his wallet sufficient to support the custodial arrest. Mr. Barwick had a right of privacy in his wallet; he did not have to hold it open for the officer to see.

Trooper Deiner's conclusion Mr. Barwick had something to hide is pure speculation. In addition, most persons stopped by law enforcement officers display some signs of nervousness. What Trooper Deiner interpreted as furtiveness may have been no more than evidence Mr. Barwick was uncomfortable in this situation. In the circumstances present here, there were no grounds for a custodial arrest and a search incident thereto.

Accordingly, we hold the trial court should have granted Mr. Barwick's motion to suppress the evidence of cocaine seized from him.

Reversed.

MUNSON and SWEENEY, JJ., concur.