[No. 12500-9-III.   Division Three.   April 21, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. DON W. COLE, *Appellant.*

*Richard G. Wogsland,* for appellant.

*James H. Kaufman, Prosecuting Attorney,* and *Ronald D. Shirley, Deputy,* for respondent.

SWEENEY, J. — Don W. Cole was convicted of one count of possession of a controlled substance, to-wit: cocaine, and one count of possession of drug paraphernalia. He contends the court erred in denying his motion to suppress evidence obtained after an improper traffic infraction seizure. We reverse and dismiss.

## I

### FACTS

On March 1, 1991, three state patrol troopers and two deputies in four cars were conducting a "DWI emphasis patrol" on the highway between Colfax and Pullman. At approximately 9 p.m., Sergeant Lee C. Boling observed a car traveling 25 miles per hour in a 35-mile-per-hour zone and occasionally weaving onto the shoulder of the highway. Sergeant Boling pulled in behind the car and noticed its exhaust pipes were also too short. He decided to stop the car and issue a citation for defective exhaust, improper lane travel and driving on the shoulder. RCW 46.37.390; RCW 46.61.140.

Trooper Lee Slemp and Deputy Vincent Waltz, in another car, followed Sergeant Boling to assist. The car pulled off the road in response to the patrol's signal. Sergeant Boling parked behind and to the left, while Trooper Slemp parked behind and to the right. Trooper Robert Aucutt arrived sometime later in a third patrol car. Sergeant Boling approached and began questioning the car's driver, Kevin Williams. Trooper Slemp approached the passenger side, where Mr. Cole was sitting.

As Trooper Slemp approached the passenger door, he noticed Mr. Cole was not wearing a safety belt and decided to cite him for a safety belt infraction; he did not know whether Mr. Cole had been wearing a safety belt before the car stopped. He asked for identification, but Mr. Cole did not have identification with him. Mr. Cole did provide his name and birthdate.

Trooper Slemp asked Mr. Cole to step out of the car. He later testified that standard state patrol procedure called for separation of an unidentified person from other car occupants. In this way, he explained, a trooper could ask Mr. Cole his name out of Mr. Williams' presence and then return to confirm the information with Mr. Williams. Mr. Cole got out of the vehicle and the trooper patted him down for weapons. Finding none, Trooper Slemp recorded Mr. Cole's name and birthdate for a radio check, sent Mr. Cole to stand in front of Sergeant Boling's car and directed Deputy Waltz to watch him.

As Trooper Slemp walked to where Sergeant Boling was questioning Mr. Williams, he heard a clinking sound, turned around, and saw Mr. Cole pushing something under the patrol car with his foot. Trooper Slemp retrieved the object and identified it as a glass pipe containing a white crystalline residue, probably cocaine. Mr. Cole was arrested for possession of a controlled substance. In the search of Mr. Cole incident to his arrest, Trooper Aucutt also found a vial of white powder, over $5,000 in cash, another glass pipe and an 8-inch knife.

Mr. Cole was charged by information with possession of a controlled substance (RCW 69.50.206(b)(5), .401(d)) and possession of drug paraphernalia (RCW 69.50.102, .412(1)). He moved to suppress the evidence recovered in the search as the fruits of an illegal search and seizure. The trial court denied the motion. Mr. Cole submitted his case on a stipulated record and was found guilty on both charges. This appeal followed.

## II

### DISCUSSION

Mr. Cole contends he was unreasonably seized in violation of the Fourth Amendment's protection against unreasonable searches and seizures. The State agrees Mr. Cole was seized, but argues the seizure was a limited detention authorized by RCW 46.64.015[1] for the issuance of traffic citations.

In 1979, the Legislature decriminalized most traffic offenses and created a list of minor offenses for which no arrest is authorized. RCW 46.63; Laws of 1979, 1st Ex. Sess., ch. 136. All traffic violations were decriminalized except for more serious offenses defined by RCW 46.64.015, RCW 10.31-.100(3) and RCW 46.63.020. The Legislature authorized the

---

[1]The statute provides, in pertinent part:

"Whenever any person is arrested for any violation of the traffic laws or regulations which is punishable as a misdemeanor or by imposition of a fine, the arresting officer may serve upon him or her a traffic citation and notice to appear in court. Such citation and notice shall . . . include spaces for the name and address of the person arrested, the license number of the vehicle involved, the driver's license number of such person, if any, the offense or violation charged, the time and place where such person shall appear in court, and a place where the person arrested may sign. Such spaces shall be filled with the appropriate information by the arresting officer. The arrested person, in order to secure release, and when permitted by the arresting officer, must give his or her written promise to appear in court as required by the citation and notice by signing in the appropriate place . . . *The detention arising from an arrest under this section may not be for a period of time longer than is reasonably necessary to issue and serve a citation and notice,* except that the time limitation does not apply under any of the following circumstances:

"(1) Where the arrested person refuses to sign a written promise to appear in court as required by the citation and notice provisions of this section;

"(2) Where the arresting officer has probable cause to believe that the arrested person has committed any of the offenses enumerated in RCW 10.31.100(3), as now or hereafter amended;" (Italics ours.)

Supreme Court to promulgate procedural rules for the traffic violations specified in RCW 46.63.080(1). To that end, the Justice Court Traffic Infraction Rules (JTIR) were adopted in January 1981 to "secure the just, speedy, and inexpensive determination of every traffic case." JTIR 1.1(b).[2] Riding in a vehicle without wearing a safety belt became a traffic infraction in 1986. RCW 46.61.688.

Traffic infractions, as distinguished from misdemeanor traffic offenses, result in the issuance of a "notice of infraction".[3] This notice includes the name and address of the court where the notice is to be filed, the defendant's name and address, the alleged infraction, space for the defendant to sign a promise to respond to the notice of infraction, and space for the monetary penalty which may be paid by the defendant in lieu of appearing in court. JTIR 2.1(b). The police officer issuing the infraction notice must have "probable cause to believe" the person committed an infraction; however, the infraction need not have been committed in the officer's presence. JTIR 2.2(b)(1).

A person stopped for a traffic infraction may be detained only for the time reasonably necessary "to identify the person, check the status of the person's license, insurance identification card, and the vehicle's registration, and complete and issue a notice of traffic infraction". RCW 46.61.021(2). Vehicle passengers are not required to carry driver's licenses or other identification. *State v. Barwick*, 66 Wn. App. 706, 709, 833 P.2d 421 (1992). He need only "identify himself, give his current address, and sign an acknowledgement of receipt of the notice of infraction." RCW 46.61.021(3).

■ Mr. Cole contends Trooper Slemp's decision to issue a notice of infraction for the safety belt violation was a pretext

---

[2]JTIR was changed to Infraction Rules for Courts of Limited Jurisdiction (IRLJ) effective September 1, 1992, after the infraction which is the subject of this appeal. No substantive changes were made in the rules.

[3]*State v. Barwick*, 66 Wn. App. 706, 708, 833 P.2d 421 (1992) incorrectly states RCW 46.64.015 sets forth the procedure following an arrest for a traffic *infraction*. The procedure followed for an infraction is set forth in RCW 46.63 and the JTIR (now IRLJ).

to conduct a search or to harass him. *See United States v. Franklin*, 728 F.2d 994, 997 n.5, 80 A.L.R. Fed. 385 (8th Cir. 1984). Since the trooper did not actually observe Mr. Cole riding in the car without his safety belt, he questions whether Trooper Slemp had "probable cause to believe" the infraction had been committed. Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a cautious person's belief an offense has been committed. *State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979); *State v. Gluck*, 83 Wn.2d 424, 426-27, 518 P.2d 703 (1974).

The provisions of RCW 46.61 refer to the operation of vehicles on highways. RCW 46.61.005. "Every person sixteen years of age or older operating or riding in a motor vehicle shall wear the safety belt assembly in a properly adjusted and securely fastened manner." RCW 46.61.688(3). Trooper Slemp admitted he did not observe whether Mr. Cole had been wearing his safety belt before the car stopped, and only noticed the belt was off when he reached Mr. Cole's window.

The court found that the lack of a fastened safety belt provided the trooper with a "well-founded suspicion, based on objective facts", that Mr. Cole had not been wearing the belt while traveling on the highway. Probable cause is a question of fact which is reviewed to determine whether there is substantial evidence to support the finding. *Waid v. Department of Licensing*, 43 Wn. App. 32, 35, 714 P.2d 681, *review denied*, 105 Wn.2d 1015 (1986). Here, we need not pass upon the sufficiency of the evidence to support the court's finding since we rule that the officer's detention of Mr. Cole went beyond that authorized by RCW 46.61.021(2).

As noted, Mr. Cole was not required to carry a driver's license, vehicle registration or insurance identification. *Barwick*, at 709. A passenger stopped for an infraction need only identify himself, give his current address, and sign the notice of infraction. RCW 46.61.021(3). Mr. Cole did all of this.

At the point Mr. Cole was told to step out of the car, the infraction investigation escalated to a *Terry* stop. But a *Terry* stop was not warranted by the nature of the investigation (a safety belt violation) or the officer's suspicions (he apparently had none). The pat-down search of Mr. Cole, moreover, would have been justified only if Trooper Slemp could have pointed to specific and articulable facts creating an objectively reasonable belief that a suspect is armed and presently dangerous. *State v. Collins*, 121 Wn.2d 168, 173, 847 P.2d 919 (1993) (citing *Terry v. Ohio*, 392 U.S. 1, 21-24, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). Trooper Slemp expressed no concern Mr. Cole might be armed nor did he express concern for his safety for that matter. His only reason for detaining Mr. Cole was to confirm his identity; that is not sufficient grounds for the detention.

The scope of an investigatory stop is determined by considering (1) the purpose of the stop, (2) the amount of physical intrusion on the suspect's liberty, and (3) the length of time of the seizure. *State v. Gonzales*, 46 Wn. App. 388, 394, 731 P.2d 1101 (1986). Even assuming the original stop was justified, removing Mr. Cole from the car, frisking him and putting him under the control of another officer went beyond the intrusions necessary for a minor traffic infraction. *See* RCW 46.61.021(3).

Because the seizure of Mr. Cole was unreasonable, evidence obtained as the result of the seizure must be suppressed. *State v. Bonds*, 98 Wn.2d 1, 11, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831 (1983). Accordingly, we reverse and dismiss.

THOMPSON, C.J., and MUNSON, J., concur.

Review denied at 125 Wn.2d 1003 (1994).